NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2016-0639


BRIAN LANGEVIN & a.

v.

TRAVCO INSURANCE COMPANY

Argued:  September 27, 2017
Opinion Issued:  March 30, 2018


Backus, Meyer & Branch, LLP, of Manchester (BJ Branch on the brief and orally), for the plaintiffs.


Primmer Piper Eggleston & Cramer PC, of Manchester (Doreen F. Connor on the brief and orally), for the defendant.


Douglas, Leonard & Garvey, P.C., of Concord (Megan Douglass on the brief), for the New Hampshire Association for Justice, as amicus curiae.


BASSETT, J.  The plaintiffs, Brian and Nancy Langevin, appeal an order of the Superior Court (Brown, J.) denying their motion for summary judgment and granting summary judgment to the defendant, Travco Insurance Company (Travco).  The trial court ruled that the plaintiffs were not entitled to payment

from Travco under their medical payments coverage to pay a lien asserted by the plaintiffs' health insurer because such payment would constitute a "duplicate payment" contrary to the language of both RSA 264:16, IV (2014) and the plaintiffs' automobile insurance policy with Travco. We reverse and remand.

The following relevant facts are derived from the trial court's order or are otherwise undisputed. On October 4, 2014, the plaintiffs were injured in a motor vehicle accident. At the time of the accident, the plaintiffs had health insurance coverage through Aetna. They also had an automobile insurance policy with Travco that included medical payments coverage of $25,000 per person. That policy provides:

> A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":
>
> 1. Caused by accident; and
>
> 2. Sustained by an "insured."

The policy also includes an endorsement that modifies the medical payments coverage and provides that:

> B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and a health insurance policy.

Similarly, RSA 264:16, governing medical payments coverage in automobile liability policies, provides:

> IV. The insured shall have the exclusive right to <u>submit</u> a claim for medical expenses under <u>either</u> medical payments coverage <u>or</u> a health insurance policy <u>or both</u>, as the insured elects; <u>provided, however, an insured shall not be entitled to duplicate payment from medical payments coverage and a health insurance policy for the same medical expense</u>.

RSA 264:16, IV (emphases added).

Following the accident, the plaintiffs submitted their medical expenses, totaling $6,820.33, to Aetna. Aetna negotiated with the providers and paid $1,861.90 in full satisfaction of the medical expenses. The plaintiffs also submitted a claim to Travco for other medical expenses not covered by Aetna, including co-pays and deductible payments, which Travco paid.

2

Subsequently, the plaintiffs reached a settlement with the driver responsible for the accident. Aetna then asserted a lien against this settlement for the $1,861.90 payment that it had made for the plaintiffs' medical expenses. The plaintiffs paid Aetna $1,500.00 in partial satisfaction of the lien amount and informed Aetna that they would leave the remaining $361.90 unpaid "until we resolve the issue of whether medical payment coverage can be used to pay the lien." The plaintiffs, in turn, submitted a claim to Travco under their medical payments coverage, requesting the entire lien amount of $1,861.90. Travco denied the claim, asserting that it was neither contractually nor statutorily obligated to pay the lien.

The plaintiffs filed suit seeking a declaratory judgment that they are entitled to payment from Travco in the amount of Aetna's lien. The parties filed cross-motions for summary judgment. The trial court ruled in Travco's favor. It concluded that, because the plaintiffs "have submitted to and received payment from Aetna for [the] medical expenses, it is axiomatic that requiring Travco to pay for a lien based upon those same exact medical expenses constitutes a duplicate payment" under RSA 264:16, IV and the Travco policy language. The trial court further stated that "Aetna's ability to assert rights on a certain settlement . . . is wholly inapposite to whether payment for medical expenses was made in the first instance." The trial court denied the plaintiffs' motion to reconsider, and this appeal followed.

In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Russell v. NGM Insurance Company, 170 N.H. ___, ___ (decided Nov. 15, 2017) (slip op. at 2). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

On appeal, the plaintiffs argue that the trial court erred when it concluded that the plaintiffs' receipt of payment from Travco for Aetna's lien would constitute a prohibited duplicate payment under both RSA 264:16, IV and the policy. Because "a provision which conflicts with the Financial Responsibility Law [RSA chapter 264] cannot be a valid part of [a] contract of insurance," Universal Underwriters Ins. Co. v. Allstate Ins. Co., 134 N.H. 315, 318 (1991), we first interpret RSA 264:16, IV, and then construe the policy in light of our interpretation of the statute.

We review the trial court's interpretation of a statute de novo. Wells Fargo Bank v. Schultz, 164 N.H. 608, 610 (2013). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of

3

Carrier, 165 N.H. 719, 721 (2013).  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole.  Id.  This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.  segTEL v. City of Nashua, 170 N.H. 118, 120 (2017).

The plaintiffs argue that the trial court erred when it ruled that the plaintiffs' receipt of payment from Travco to satisfy Aetna's lien would constitute a "duplicate payment" in violation of RSA 264:16, IV.  The plaintiffs argue that "payment" as used in paragraph IV means only those payments made directly to the insured by the health insurer or the automobile insurer.  Travco counters that "payment" embodies a broader concept, including "payment . . . made on [the insureds'] behalf."  The plaintiffs respond that, even if Travco is correct as to the meaning of "payment," they prevail because Travco's payment of the lien on their behalf would not be a "duplicate" payment.  Assuming, without deciding, that Travco's more expansive interpretation of "payment" is correct, we agree with the plaintiffs that Travco's payment of Aetna's lien would not constitute a "duplicate payment" that violates RSA 264:16, IV.

The plaintiffs assert that Travco's payment of Aetna's lien — directly to them or on their behalf — would not be a duplicate payment.  They argue that, although Aetna initially paid the healthcare providers on their behalf, the effect of that payment was negated by Aetna's subsequent lien, and, therefore, they have not received the benefit of a payment from either Aetna or Travco for the medical expenses.  Travco responds that its payment of the lien on the plaintiffs' behalf would constitute an improper "duplicate payment" because it would result in the plaintiffs' "enrich[ment]" from both insurers for the same medical expense.  It asserts that its payment of the lien would result in the plaintiffs being enriched by both insurers because Aetna has already paid the same underlying medical expenses on the plaintiffs' behalf.  Thus, the parties appear to agree that "duplicate payment" occurs when an insured receives the benefit of payment, either directly or on his or her behalf, from both insurers for the same medical expense.  However, they disagree about whether Travco's payment of the Aetna lien in this case would result in a prohibited "duplicate payment" to the plaintiffs.  We agree with the plaintiffs that it would not.

4

Aetna paid the plaintiffs' healthcare providers $1,861.90 for certain medical expenses. There is no evidence in the record that it has made any direct payments to the plaintiffs. In fact, the plaintiffs have personally paid Aetna $1,500.00, and are obligated to pay Aetna the remainder of the lien. Nor have the plaintiffs received the benefit of a payment on their behalf. The plaintiffs initially received the benefit of a payment of $1,861.90 on their behalf from Aetna to the healthcare providers. However, both Travco and the trial court overlook the critical importance of an additional fact: that Aetna later asserted a lien against the plaintiffs' settlement with the tortfeasor in the amount of the medical expenses that Aetna had paid. That lien negated the effect of Aetna's prior payment of medical expenses on the plaintiffs' behalf because the plaintiffs are now obligated to reimburse Aetna. Put differently: the plaintiffs initially received the benefit of a payment on their behalf from Aetna. The benefit of that payment was completely offset by Aetna's subsequent lien, leaving the plaintiffs without the benefit of a payment from either their health insurer or their automobile insurer for the medical expenses at issue. Consequently, because the plaintiffs did not retain the benefit of Aetna's prior payment on their behalf, Travco's payment of the Aetna lien — either directly to the plaintiffs or on their behalf — would not result in the plaintiffs benefiting from payment from both insurers for the same medical expense. Therefore, we conclude that Travco's payment of Aetna's lien would not constitute a prohibited "duplicate payment" under RSA 264:16, IV.

The plaintiffs argue that this interpretation of the statute is consistent with the legislative intent expressed when viewing the "duplicate payment" language in the context of the statute as a whole. Specifically, they argue that RSA 264:16, IV provides insureds with a right to submit a claim to either their health insurer or their automobile insurer, or both insurers, and evidences the legislature's intent to emphasize "consumer choice," and "to ensure that benefits are coordinated in the manner which most benefits the consumer." Although the plaintiffs argue that the insured has the right to submit a claim to both insurers, they acknowledge that, through the prohibition on "duplicate payments," the legislature intended to prevent an insured from "double dipping by submitting the exact same bills to the two [insurers] and receiving payment twice, once from each [insurer]." Travco counters that the plaintiffs are incorrect because the statute does not allow an insured to submit a claim for the same medical expense to both their health insurer and automobile insurer, but, rather, it merely allows the insured the right to "elect which insurance plan will provide primary benefits." Further, it asserts that if insureds were entitled under RSA 264:16, IV "to submit the same bills to both plans, the statute . . . would not contain language prohibiting duplicate payments." We agree with the plaintiffs.

RSA 264:16, IV provides the insured with the "exclusive right" to "elect[]" whether "to submit a claim for medical expenses under either medical payments coverage or a health insurance policy or both." RSA 264:16, IV

5

(emphases added). Nothing in the plain language of this provision suggests that, as Travco contends, the insured must choose a "primary insurer," and we will not "add language that the legislature did not see fit to include." Petition of Carrier, 165 N.H. at 721. Rather, the plain language states that the insured may elect to submit a claim "under either . . . or both" types of insurance. RSA 264:16, IV. This language evidences legislative intent to ensure an insured's choice over how to use his or her health and automobile insurance benefits. See Petition of Carrier, 165 N.H. at 721 (stating that we interpret "the intent of the legislature as expressed in the words of the statute considered as a whole").

The legislative intent to safeguard the insured's choice over how to use his or her benefits is also expressed elsewhere in the statute. For example, RSA 264:16, II gives an insured the right to control how his or her insurance benefits are utilized by prohibiting health insurers from "coordinat[ing] benefits against medical payments coverage" provided by automobile insurers. RSA 264:16, II (2014). The statute also gives the insured control of his or her benefits by providing that "[m]edical payments coverage shall not be assignable to any health care provider." RSA 264:16, III (2014). Both of these provisions evince a legislative intent to protect the insured from being forced to use his or her benefits in a particular way — thereby preserving the insured's choice and control over how to utilize his or her separate insurance benefits. This right of the insured is then limited by the "duplicate payment" language, which prevents the insured from getting a windfall; in other words, from receiving and retaining double payment for the same medical expense from both his or her health insurer and automobile insurer. Thus, the legislative intent of the statute, considered as a whole, supports our interpretation of "duplicate payment," an interpretation which gives the plaintiffs the opportunity to use insurance benefits under both insurance policies for which they have paid, but does not permit the plaintiffs to retain the benefit of payment from both insurers.

Although our interpretation does not allow the plaintiffs to retain the benefit of payment from both a health insurer and an automobile insurer for the same medical expense, we recognize that it does leave open the possibility that the plaintiffs will receive a double benefit in a different sense — they may receive and retain the benefit of medical payments coverage, and a recovery from the third-party tortfeasor. This type of double benefit is not prohibited by RSA 264:16, IV. The plain language of RSA 264:16, IV prohibits duplicate payments for the same medical expense from only two sources: "medical payments coverage and a health insurance policy." RSA 264:16, IV. It does not address payments — duplicate or otherwise — from a tortfeasor or a tortfeasor's liability insurer. See RSA 264:16, IV. Because the statute expressly prohibits "duplicate payment" only from medical payments coverage and a health insurance policy — with no reference to payments from the tortfeasor or the tortfeasor's liability policy — we construe the prohibition on "duplicate payment" as applying only to medical payments from health insurers

and automobile insurers.  See St. Joseph Hosp. of Nashua v. Rizzo, 141 N.H. 9, 11-12 (1996) ("Normally the expression of one thing in a statute implies the exclusion of another." (quotation omitted)); Petition of Carrier, 165 N.H. at 721 (stating that, in matters of statutory interpretation, we will not "add language that the legislature did not see fit to include").

Moreover, in other contexts, we have acknowledged that an accident victim's recovery from both an insurer and a tortfeasor is permitted.  See, e.g., Wolters v. Am. Republic Ins. Co., 149 N.H. 599, 602-03 (2003) (holding that, absent a health insurer's contractual right to subrogation, plaintiff may receive both health insurance benefits and tortfeasor recovery); Moulton v. Groveton Papers Co., 114 N.H. 505, 509 (1974) (observing that, under the collateral source rule, if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor, he is still permitted to make full recovery against the tortfeasor).  In those contexts, the ability of the plaintiff to receive a double benefit was premised upon certain policy considerations, including: (1) that ordinary tort damages may not adequately compensate accident victims; and (2) that an insured should be able to receive the benefit that she has paid for in the form of insurance premiums, even if also compensated by a tortfeasor.  See Wolters, 149 N.H. at 602-03 (observing, in the context of refusing to recognize health insurer's equitable right to subrogation, that recovery from both health insurer and tortfeasor does not necessarily produce a windfall double recovery because "[l]ife and death, health, physical wellbeing, and such matters are incapable of exact financial estimation" (quotation omitted)); Moulton, 114 N.H. at 509-10 (discussing policy justifications for collateral source rule, including that the plaintiff has paid for the insurance benefits he or she may receive in addition to third-party recovery, and that ordinary damages are inadequate to fully compensate plaintiff).  Our interpretation of RSA 264:16, IV — which prohibits an insured from receiving a benefit from both a health insurer and an automobile insurer for the same medical expense, but allows the insured to receive both the benefit of medical payments coverage and recovery from a tortfeasor — is consonant with these policy considerations.

Our interpretation of the statute is also in accord with the principle that we "construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Petition of Carrier, 165 N.H. at 721.  At oral argument, Travco acknowledged that, had the plaintiffs submitted the medical expenses at issue to Travco in the first instance, the plaintiffs would have been entitled to full payment from Travco.  Travco further acknowledged that, under that scenario, the plaintiffs would have been entitled to both their recovery from the third-party tortfeasor, as well as Travco's direct payment to the medical providers of the full $6,820.33.  At oral argument, Travco also conceded that, under those circumstances, it would have no subrogation rights against the settlement.  See RSA 264:17 (2014) (providing that automobile insurers that provide medical payments coverage as described in RSA 264:16

7

shall not have a right of subrogation against a third party).  Nonetheless, Travco argues that, because the plaintiffs first submitted their claim to Aetna, they are entitled to only their third-party settlement less the $1,861.90 in medical expenses Aetna initially paid on their behalf.  This interpretation of the statute, which would result in two significantly different outcomes as a consequence of which claim is submitted to which insurer first, would, in essence, deprive the insureds of the benefit of one of the two insurance policies that they had paid for.  This would also frustrate the overarching purpose of the Financial Responsibility Act "to provide compensation to persons harmed by the negligent operation of motor vehicles," Progressive N. Ins. Co. v. Enterprise Rent-A-Car Co., 149 N.H. 489, 492 (2003), and would be inconsistent with the legislature's intent as expressed in RSA 264:16 to protect the insured's freedom to choose how to utilize his or her benefits.

Notably, and perhaps ironically, if Travco is required to provide medical payments coverage, it will benefit from the fact that the plaintiffs first submitted the claim to Aetna.  Had the plaintiffs initially submitted their medical expenses claim directly to Travco, as the statute permits, see RSA 264:16, IV, Travco concedes it would have been obligated to pay the full cost — $6,820.33.  However, because the plaintiffs elected to first submit their claim to Aetna, Aetna obtained a discount and lowered the amount of the bill, leaving Travco with a potential exposure of only $1,861.90.

Travco also argues that its payment of "the health care providers' lien" is prohibited by RSA 264:16 and RSA 264:17 because allowing payment would be "the equivalent of allowing the health care provider to seek assignment and/or subrogation contrary to both" of the statutes.  Although Travco uses the term "health care provider" in making this argument, this case involves a lien asserted by Aetna, a health insurer.  Travco has not identified any lien asserted by a health care provider.  Therefore, we construe Travco's argument as asserting that payment of the lien would be the equivalent of allowing Aetna — the health insurer — to seek assignment or subrogation contrary to the statutes.  We disagree.  RSA 264:16 prohibits the assignment of medical payments coverage to any health care provider.  RSA 264:16, III.  However, Travco's reliance upon that provision is misplaced: Aetna is not a health care provider; rather, it is a health insurer.  See RSA 264:16, II-III (referring to "health care provider" as distinct from "health carrier as defined in RSA 420-G:2, VIII"); RSA 420-G:2, VIII (2015) (defining "[h]ealth carrier" as "any entity subject to the insurance laws and rules of this state . . . including an insurance company").  Therefore, RSA 264:16, III is inapposite.

Similarly, Travco's reliance upon RSA 264:17 is misplaced.  RSA 264:17 provides that automobile insurers who have paid or reimbursed insureds for medical expenses under medical payments coverage do not have "[t]he right of subrogation against any third party."  RSA 264:17.  Thus, RSA 264:17 prohibits automobile insurers that have made payments to, or for the benefit

8

of, the insured under medical payments coverage from acquiring or asserting subrogation rights. By contrast, the statute is silent as to the subrogation rights of health insurers, like Aetna. Indeed, we have found no statute governing the subrogation rights of health insurers. Cf. RSA 448-A:1 (2002) (granting hospitals and home health care providers the statutory right to a lien upon patient's recovery from third party when patient's injury is caused by an accident). Rather, health insurers may acquire subrogation rights by contract, via their policies with insureds. See Wolters, 149 N.H. at 604 (holding that "a health insurance company has no common law or equitable right to subrogation, and that if such a company desires protection against loss caused by the wrongs of third persons who would ordinarily be liable they must do so by the contracts they make" (quotation and brackets omitted)). Thus, Aetna's assertion of its subrogation rights against the plaintiffs' recovery from the third-party tortfeasor is not contrary to RSA 264:17.

In sum, we conclude that the trial court erred when it ruled that a payment from Travco for Aetna's lien would constitute a prohibited "duplicate payment" under RSA 264:16, IV.

We now turn to the plaintiffs' final argument: that the trial court erred when it found that the "duplicate payments" language in the Travco policy prohibited them from receiving payment from Travco for the lien. Resolving this issue requires us to interpret the Travco policy. We interpret insurance policy language de novo. See Russell, 170 N.H. at ___ (slip op. at 3). The relevant policy language states: "No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and a health insurance policy." This language is similar to the language of RSA 264:16, IV that we have already construed. The plaintiffs contend that the policy language should be interpreted in the same fashion as RSA 264:16, IV. Travco argues that the policy should be interpreted consistent with its contrary construction of the statute. Because we agree with the plaintiffs' interpretation of the statute, we also agree with their interpretation of the policy.

Travco acknowledges that the policy language "tracks RSA 264:16[, IV]." Given that the policy language tracks the statutory language prohibiting duplicate payment, and that Travco does not premise its argument upon any asserted language differences between the statute and the policy, we interpret the policy in the same way that we interpret the statute. Cf. Santos v. Lumbermens Mut. Cas. Co., 556 N.E.2d 983, 990-91 (Mass. 1990) (interpreting insurance policy language in same way as nearly identical statutory language). Therefore, we conclude that the plaintiffs' receipt of payment from Travco for Aetna's lien would not be prohibited as a "duplicate payment" under the policy. The trial court's ruling to the contrary was error.

Finally, to the extent that the parties also dispute whether a health insurance lien is a "medical expense" under RSA 264:16, IV and the policy, we

decline to address their arguments.  Although this issue appears to have been raised before the trial court, the trial court did not expressly address it.  On appeal, neither party has presented us with a fully developed legal argument regarding interpretation of the term "medical expense" under the statute and the similar policy language "reasonable expenses incurred for necessary medical . . . services."  Nor have the parties developed legal arguments about the impact adopting their respective interpretations would have on the disposition of this appeal.  Because we confine our review to only those issues that the parties have fully briefed, we deem these arguments waived.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

Reversed and remanded.

DALIANIS, C.J., and LYNN and HANTZ MARCONI, JJ., concurred.